| | | |
|---|---|---|
| NILESH ENTERPRISES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-08-CV-661-XR |
| | § | |
| LAWYERS TITLE INSURANCE | § | |
| CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER ON MOTION FOR SUMMARY JUDGMENT

On this date, the Court considered Defendant's motion for summary judgment and brief in support (Docket Entry No. 28), Plaintiff's response, and Defendant's reply.  Defendant's motion for summary judgment is GRANTED IN PART AND DENIED IN PART.

## I. Background

*A. The Policy and Restrictive Covenants*

On March 29, 2007, Plaintiff Nilesh Enterprises, Inc., ("Nilesh") obtained an Owner's Policy of Title Insurance ("Policy") issued by Defendant Lawyers Title Insurance Corporation ("Lawyers Title").  (Pl.'s 2d Am. Compl. Ex. 1 [Docket Entry No. 20].)[1]  Defendant's policy insured Nilesh's title to property located in San Antonio, Bexar County, Texas, as identified in Schedule A ("Property") of the Policy.  (Def.'s Mot. for Summ. J. 2 (Jul. 15, 2009) ("Mot.") [Docket Entry No. 28]; Pl.'s Resp. (Aug. 5, 2009) ("Resp.") [Docket Entry No. 31]; Compl. Ex. 1.)  At that time,

---

[1]References to factual statements in the complaint refer to the document listed in Docket Entry No. 20, which is Plaintiff's Second Amended Complaint, filed on March 24, 2009.  The Plaintiff has entitled this document "Plaintiff's Second Amended Original Petition."  For purposes of this Order, and unless otherwise indicated, references to this document will be noted as "Complaint" or "Compl."

the Property was subject to two sets of restrictive covenants that affected the Property: (1) Second Amended and Restated Exposition Plaza Declaration of Restrictive Covenants[2] ("1995 Covenant") and (2) Declaration of Restrictive Covenants[3] ("1996 Covenant"). The 1995 Covenant restricts use of the Property "so long as such purpose does not involve any product or entertainment appealing to prurient interests." 1995 Covenant art. 2, §3. The 1996 Covenant states that the "Property shall be developed and used only for restaurant (which may include the sale of alcoholic beverages and "take out" service) or hotel purposes . . . ." 1996 Covenant art. 2, § 1.

Prior to Lawyers Title's issuance of the Policy, Nilesh had leased the Property to Aces Wired Amusement Center No. 8, L.P. and Aces Wired, Inc. (collectively "Aces"). After the issuance of the Policy, Aces defaulted on its lease, and Nilesh filed, and subsequently settled, a lawsuit in state court against Aces for failure to pay rent. *See Nilesh Enterps., Inc. v. Aces Wired Amusement Ctr. No. 8, L.P.*, No. 2007-CI-19042 (73d Dist. Ct., Bexar County, Tex. 2007). Nilesh contends that Aces alleged in its defense that the 1995 Covenant precluded its use of the property. (Compl. ¶ 3.)

*B. The Underlying Lawsuit*

On August 17, 2007, Nilesh leased the Property to Airport Restaurants, Inc., and its sublessee, B Rock, Inc., d/b/a Boobie Rock VI ("B Rock"), a "restaurant offering gentlemen's entertainment." (Compl. ¶ 4; Resp. at 1.) On October 16, 2007, EOS Acquisitions II, LLC, a neighboring property owner, filed suit ("EOS lawsuit") in state court against B Rock and Nilesh for injunctive relief, claiming that the 1995 and 1996 Covenants prohibited B Rock's planned use of the Property. *See EOS Acquisitions II, LLC v. B Rock, Inc.*, No. 2007-CI-15677 (150th Dist. Ct., Bexar

---

[2]Bexar County, Texas, Deed Records, vol. 6595, pages 1862–82 (Nov. 13, 1995).

[3]Bexar County, Texas, Deed Records, vol. 647, pages 624–43 (Jan. 15, 1996).

County, Tex. Oct. 16, 2007). The state court granted a temporary restraining order and issued a temporary injunction on October 31, 2007, finding that the 1995 and 1996 Covenants likely prohibited B Rock's intended use of the Property.

On January 15, 2008, Nilesh, through its attorney John C. Howell, notified Lawyers Title of the EOS lawsuit. The letter stated that "[t]he restrictive covenant in question is not referenced in the Owners Policy of Title Insurance nor the exclusions from coverage." Letter from John C. Howell, Attorney for Nilesh, to Lawyers Title Insurance Company/Land America Lawyers Title (Jan. 15, 2008). The letter asked for Lawyers Title's position regarding coverage and defense. *Id.*

Lawyers Title responded with a letter on January 23, 2008, acknowledging that the Policy did not except the 1995 Covenants from coverage but that it excepted the 1996 Covenants. Lawyers Title noted that EOS filed the lawsuit in October 2007, but that it did not receive notice of the lawsuit until January 16, 2008, with a trial on the merits scheduled for January 28, 2008. Defendant "engaged a local counsel [Mr. Frank Oliver of Oliver & Oliver P.C. in Austin, Texas] to represent the insured only in connection with the alleged violation of the 1995 Covenants." Letter from Stuart Johnston, Associate Claims Counsel, Lawyers Title Insurance Corporation, to Howell (Jan. 23, 2008). Nilesh states that the law firm engaged by Lawyers Title "monitored the litigation, but did not file an appearance for Nilesh." (Resp. at 2.) Lawyers Title contends that it "did not control or otherwise instruct Oliver how it should defend Nilesh . . . ." (Mot. at 8.)

Nilesh submitted a letter to Lawyers Title as a "sworn Proof of Damage or Loss." Letter from Howell to Johnston (Mar. 12, 2008). Lawyers Title responded that the "demand for immediate payment of loss is premature. . . . [since] [t]he policy provides that in the event of any litigation, Lawyers Title shall have no liability for loss or damage until there has been a final determination by

a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title as insured." Letter from Johnston to Howell (Mar. 19, 2008). The letter further stated that Defendant would analyze the Proof of Loss or Damage at "the appropriate time" and noted that the litigation also involved an alleged violation of the 1996 Covenant. *Id.*

Prior to trial, which was reset to April 14, 2008, Nilesh settled EOS's claims against it. Nilesh contends that Lawyers Title's "refus[al] to pay Nilesh's attorney's fee bills, commit to fund an appeal, return telephone calls regarding settlement negotiations and/or appeal strategy" and the "financial hardship" and "likelihood of a financially devastating judgment" led it to reach a settlement with EOS. (Resp. at 2–3.) As part of the Settlement Agreement, Nilesh agreed to pay $150,000 to EOS for attorneys' fees and to execute a new restrictive covenant that barred a list of "adult entertainment establishment[s]" from operating on the property ("2008 Covenant"). Compromise Settlement and Mutual Release Agreement, EOS Acquisitions II, LLC, Nilesh Enterprises, Inc. 2–3 (Apr. 14, 2008) (Mot. app. ex. B.6.).

Plaintiff notified Lawyers Title of the Settlement Agreement by letter and requested that Lawyers Title fund the settlement. *See* Letter from Howell to Johnston (Apr. 16, 2008). Defendant responded through counsel that it was reviewing: "(1) whether Lawyers Title was prejudiced by Nilesh's late notice of the Claim, (2) the purported proof of loss . . . submitted on March 12, 2008, and (3) whether Nilesh has suffered any covered loss or damage under the policy." Letter from Amanda Sotak, Attorney for Lawyers Title Insurance Corporation, to Howell (May 1, 2008).

*C. Procedural History and Claims in this Lawsuit*

Nilesh filed suit against Lawyers Title in the 166th District Court of Bexar County, Texas, on July 14, 2008. Lawyers Title removed the case to this Court on August 8, 2008, on the basis of

4

diversity jurisdiction.  Nilesh sued Lawyers Title asserting claims for breach of contract, alleging that Defendant failed to insure against loss or damage "by reason of any defect in encumbrance on title," failed to defend the Plaintiff, and failed to fulfill its duties upon notice of its claim; deceptive trade practices in violation of the Texas Deceptive Trade Practices Act, TEX. BUS. & COM. CODE §§ 17.46, 17.50(a)(1)(A), (B)(3), (B)(4); unfair claims practices in violation of the Texas Insurance Code, TEX. INS. CODE §§ 541.051, .060, .061, 542.003; and breach of the duty of good faith and fair dealing. (Compl. ¶¶ 10–19.)  Plaintiff also contends that Defendant "is barred by the doctrines of waiver, estoppel, and unclean hands from asserting Policy exclusions, limitations of liability and/or that Plaintiff failed to comply with a Policy condition" and that Plaintiff is excused from performance via Defendant's alleged anticipatory breach of the contract.  (Compl. ¶¶ 20–21.)  Plaintiff seeks attorney's fees in the amount of $85,000, damages to settle the EOS lawsuit, a $2,045,714 difference in market value of the Property "as insured" versus the market value of the Property "had the 1995 Covenant been made a specific exception to coverage," and treble or exemplary damages and attorneys' fees under Texas statute. (Compl. ¶ 22.)  Defendant filed a motion for summary judgment on all of Nilesh's claims.  It is this motion for summary judgment that this Court now considers.

## II.  Standard of Review

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact.  *Celotex Corp.  v. Catrett*, 477 U.S. 317, 325 (1986).  To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's

claim or defense.  *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990),

*cert. denied*, 510 U.S. 859 (1993).  Once the movant carries its initial burden, the burden shifts to the

nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922

F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court

must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other

words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return

a verdict for the nonmovant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986).  In making this determination, the court should review all the evidence

in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence

supporting the moving party that is uncontradicted and unimpeached, at least to the extent that

evidence comes from disinterested witnesses" and disregarding the evidence favorable to the

nonmovant that the jury is not required to believe.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 152, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

### III.  Analysis

*A.  Breach of Contract*

Plaintiff contends that Defendant breached its contractual duties.  Nilesh claims that Lawyers

Title breached its contractual obligation to insure against "loss or damage sustained or incurred by

Plaintiff by reason of any defect in encumbrance on title," to defend Nilesh in litigation in which a

third party asserts "a claim adverse to Nilesh's title or interest," to "promptly investigate whether the

claim was valid," "institute any proceedings to claim the encumbrance," or indemnify the Plaintiff.

(Compl. ¶¶ 10–16.)  Defendant argues that Nilesh cannot show that Lawyers Title breached the

indemnity obligation, it is not entitled to pay Nilesh's attorney's fees in the EOS lawsuit, there is no evidence that it breached its duty to defend, and that Lawyer's Title communicated its claims decisions to Nilesh.

Under Texas law, the rules of construction that are applicable to contracts generally control the rules of construction applicable to insurance policies. *See Cicciarella v. Amica Mut. Ins. Co.*, 66 F.3d 764, 767–68 (5th Cir. 1995) (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987)). This Court will not rewrite the terms of a contract; it will enforce it as written. *Id.* at 768. "[I]n interpreting the Policy, [this Court will] construe all parts of the document together, giving effect to the intent of the parties." *Id.* The terms of the insurance policy are given their plain, ordinary meaning unless the policy shows that the parties intended otherwise. *Am. Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). Ambiguous terms are construed against the insurer. *Id.* The determination of whether a term is ambiguous is a question of law. *Cicciarella*, 66 F.3d at 768.

*1. The Indemnity Provisions*

Nilesh asserts that the value of the Property is diminished because of the 1995 Covenant and that Lawyers Title breached the Policy by refusing to indemnify that loss in value. (Compl. ¶¶ 10–12.) Lawyers Title argues that "the existence of the 1996 and 2008 Covenants, which are not covered by the Policy, independently and separately cause the same diminution in value Nilesh seeks to recover from the 1995 Covenant." (Mot. at 13.)

In Texas, an insured is only entitled to recover the portion of damage caused by the covered risk. *All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800, 802 (Tex. App.—Dallas 2008, no pet.) ("Under the doctrine of concurrent causation, where covered and non-covered perils

combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril."). An insured bears the burden to prove that the loss was not attributable to the excluded hazard. *Traveler's Indem. Co. v. McKillip*, 469 S.W.2d 160, 162 (Tex. 1971). "To this end, the insured must present some evidence upon which the jury can allocate the damage attributable to the covered peril." *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 303 (Tex. App.—San Antonio 1999, pet. denied) (citing *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex.1993)).

The parties do not dispute the applicable provision of the Policy. The relevant portion reads:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, Lawyers Title Insurance Corporation . . . insures . . . against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of: . . . 2. Any defect in or lien or encumbrance on the title . . . . The Company also will pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.[4]

Policy at 1. Likewise, the parties do not dispute that the Policy does not cover the 1996 and 2008 Covenants. What the parties do dispute is the ability of Nilesh to establish the amount of damage caused by the 1995 Covenants, independent of the 1996 and 2008 Covenants.

Lawyers Title argues that the uncovered 1996 and 2008 Covenants are more restrictive than the covered 1995 Covenant and prohibits the same use: "gentlemen's entertainment." (Mot. at 13.) Lawyers Title asserts that "[b]ecause the Property's alleged diminished value flows from the inability to use it as a gentlemen's club, there is no way for Nilesh to segregate or allocate the alleged loss among the 1995, 1996, and 2008 Covenants, which all prohibit that use." (*Id.* at 14.) In its response,

---

[4]Owner's Policy of Title Insurance Issued by Lawyers Title Insurance Corporation to Nilesh Enterprises, Inc. No. 1211004720 (Mar. 26, 2007) (2d Am. Compl.,. ex. 1 [Docket Entry No. 20]; Mot. app. ex. B2 [Docket Entry No. 29]; Resp. app. ex. 1 [Docket Entry No. 34].) ("Policy").

Nilesh states that "covenants are not similar in scope or term." (Resp. at 11.) Nilesh points to evidence provided by expert opinions that a financial loss can be attributed to the 1995 Covenants (*id.*) and that the 1996 and 2008 Covenants do not cause the same damages as the 1995 Covenant (*id.* at 12.)

*a. The 1996 Covenant*

Nilesh has successfully presented a material issue of fact pertaining to the differences between the covered 1995 Covenant and the uncovered subsequent covenants and damages that can flow from each. Nilesh points out that the 1995 Covenant and 1996 Covenant have different expiration dates, that certain restaurants that could operate under the 1996 Covenant are precluded from operation because of the 1995 Covenant, and now that Nilesh is the sole owner of the property, the 1996 Covenant is no longer in effect. (Resp. at 16–17.) The 1995 Covenant provides a list of purposes that can operate on the property "so long as such purpose does not involve any product or entertainment appealing to the prurient interests." 1995 Covenant art. 2, § 3. The list of approved purposes includes an animal clinic, armed forces recruiting center, cabinet or carpenter shop, and clinic. *Id.* Schedule B. The 1996 Covenant is more restrictive on the use of the Property, limiting it to "restaurant . . . or hotel purposes, or any other retail use approved in writing . . . ." 1996 Covenant art. 2, § 1. Under the 1996 Covenant, the aforementioned examples listed from the 1995 Covenant could not operate on the premises.

Under the facts of this case, however, Nilesh's tenant B Rock could not operate its planned facility—"a restaurant offering gentlemen's entertainment"—on the premises because of the 1995 Covenant. Nilesh continues that it is an issue of fact as to whether its lessee, B Rock, could operate under the 1996 Covenant because "the central business theme of B Rock was a restaurant offering

food and meals to the public and providing gentlemen's entertainment." (Resp. at 11.) Defendant Lawyers Title argues that the 1996 Covenant likewise prevented B Rock's operation such a business and points to findings in the Order Granting Temporary Injunction and Final Judgment in the EOS lawsuit to support this contention.[5]

Collateral estoppel is an affirmative defenses for which defendant bears the burden of proof. *Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The party pleading the affirmative defense has "the burden on summary judgment to establish each element of that defense as a matter of law." *Crescent Towing & Salvage Co., Inc. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir.1994) (citing *Celotex Corp.*, 477 U.S. at 322–23). The preclusive effect to be accorded a prior proceeding is a question of law. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 868 (5th Cir. 2000). If a state court issued the previous judgment, then the court must look to the law of that state to determine whether the judgment should be given preclusive effect. *In re Grober*, 100 F.3d 1195, 1201 (5th Cir. 1996). Under Texas law, "[a] party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984).

Here, Defendant has not pled collateral estoppel as an affirmative defense. (*See* Def.'s Answer to Pl.'s 2d Am. Original Pet. (Apr. 7, 2007) [Docket Entry No. 21].) The EOS lawsuit is,

---

[5]Plaintiff has filed a motion requesting that the Court strike the Order Granting Temporary Injunction (Mot. app. ex. C.6 [Docket Entry No.29]) and Final Judgment (*id.* ex. C.7) in the EOS lawsuit as evidence and references to the documents in Defendant's Motion for Summary Judgment. (*See* Pl.'s Mot. to Strike Exs. "C.6 " & "C.7 " to Def.'s Mot. for Summ. J. (Aug. 5, 2009) [Docket Entry No. 32].)

however, referenced in the Answer stating that "a temporary restraining order and preliminary injunction were issued in the EOS Lawsuit barring B Rock's intended use of the Property based on the 1995 Covenants and 1996 Covenants . . . ." (*Id.* ¶ 10.) This does not preclude Defendant from raising this issue since "a motion for summary judgment is an appropriate vehicle for presenting prior judgments." 18 JAMES WM. MOORE ET AL., MOORE'S FED. PRACTICE ¶ 132.05[7] at 132-184 (3d ed. 2009); *see also United States v. Monkey*, 725 F.2d 1007, 1011 n.4 (5th 1984) (upholding summary judgment evaluation of previous court judgment). As a result, this Court may consider whether the previous state court ruling—that B Rock's intended business violated both the 1995 Covenant and 1996 Covenant—has collateral estoppel effect.

Nilesh states that it was not a party to the Final Judgment in the EOS lawsuit and had withdrawn its evidence prior to the state court's issuance of its judgment. (Resp. at 13.) Likewise, the Final Judgment issued by the state court declares: "Because Nilesh and EOS have nonsuited their claims against each other, and the Court accepted as proper Nilesh's withdrawal of all evidence it had submitted as part of any Motion, Response or other paper, the Court finds that all of Nilesh's Motions and/or Responses are moot."[6] (Mot. app. ex. C.7.)

Defendant, who has sought to use the prior judgment against Plaintiff, has failed to plead facts sufficient to establish that collateral estoppel is warranted at this point. There is no indication in Defendant's pleadings that the facts were fully and fairly litigated in the prior proceeding or the fact that B Rock's violation of the 1996 Covenant was essential to the judgment in the first action. Moreover, Nilesh's settlement prior to the state court's issuance of its final judgment raises at least

---

[6]*EOS Acquisitions II, LLC, v. B Rock Inc.*, No. 2007-CI-15677 (150th Dist. Ct., Bexar County, Tex. Apr. 24, 2008) (Final Judgment).

a genuine issue of fact for this Court to consider before it will grant preclusive effect to the issue decided by the state court. Consequently, Plaintiff has provided enough evidence at this stage of the proceedings to demonstrate that there is an issue of material fact as to whether it can attribute damages to the 1995 Covenant over the 1996 Covenant.

*b. 2008 Covenant*

Lawyers Title also claims that Nilesh cannot segregate damages from the 2008 Covenant. (Mot. at 14.) Nilesh responds that the 2008 Covenant did not come into existence until after the April 14, 2008, settlement with EOS. (Resp. at 15.) Although Nilesh asks the Court to strike references to the 2008 Covenant, it is not entirely clear on the record that Nilesh cannot segregate an amount of damage caused by the 1995 Covenant independent of the 2008 Covenant. Consequently, an issue of genuine fact remains regarding this point.

*2. Duty to Defend*

Nilesh asserts that Lawyers Title breached its duty to defend by failing to retain counsel to defend Nilesh and refusing Nilesh's "reasonable request" for a defense of the EOS lawsuit. (Compl. ¶ 12.) Lawyers Title states that it hired an attorney to defend the 1995 Covenant within days of receiving notice of the claim and that there is no evidence that Nilesh objected to the attorney it hired, complained of his performance, rejected the tendered defense, or advised Lawyers Title of a conflict. (Mot. at 17.) Moreover, Lawyers Title states that Nilesh's claim is premised on claims that the lawyer hired by Lawyers Title, Oliver, provided inadequate representation, which would not provide the basis for a claim against Defendant through vicarious liability. (*Id.* at 20.) Nilesh alleges in its Complaint and responds that Oliver never filed an appearance or filed pleadings on behalf of Nilesh.

The language of the Policy establishes the Defendant's duty to defend. Again, the parties do not dispute the language of the Policy, which reads:

> [T]he Company, at its own cost and without unreasonably delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action that allege matters not insured against by this policy.

Policy, Conditions and Stipulations § 4(a).

Under Texas law, "when an insurer has a duty to defend, even where 'a claim falls partially within and partially outside of a coverage period, the insurer's duty is to provide its insured with a *complete defense.*'" *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 559 (5th Cir. 2004) (quoting and adding emphasis to *Tex. Prop. and Cas. Ins. Guar. Ass'n/Sw. Aggregates, Inc. v. Sw. Aggregates, Inc.*, 982 S.W.2d 600, 606 (Tex. App.—Austin 1998, no pet.). A breach of the duty to defend entitles the insured to the costs it incurred to defend the suit. *Id.* at 559–60. In its evaluation of a case in which a party alleged a breach of the duty to defend, the Fifth Circuit Court of Appeals stated that such an evaluation is a "fact intensive question, not a matter of law." *Id.* at 560 (citing *Satterwhite v. Safeco Land Title of Tarrant*, 853 S.W.2d 202, 206 (Tex. App.—Fort Worth 1993, writ denied). Fulfilling the duty to defend requires that the insurance company "relieve the insureds of the duty and expense of having counsel in court, and that such company . . . assume the responsibility and burden of the defense. *Houston Title Guaranty Co. v. Fontenot*, 339 S.W.2d 347, 352 (Tex. Civ. App.—Houston 1960, writ. ref'd n.r.e.).

In this case, Lawyers Title hired counsel to defend the 1995 Covenants, recognizing that the

Policy did not cover the 1996 Covenants. Mot. app. ex. A3. Although there is no evidence presented regarding the independence of the hired counsel, Defendant's duty to defend required it to provide a "complete defense" and relieve the duty and expense of Nilesh having counsel in court. Lawyers Title's letter to Nilesh's counsel states: "We have engaged a local counsel to represent the insured only in connection with the violation fo the 1995 Covenants." *Id.* Coupled with Nilesh's contentions that the counsel hired by Lawyers Title did not appear in court on its behalf or speak with the Plaintiff's principal, there is evidence of an issue of material fact. In accordance with the Fifth Circuit's declaration that such an evaluation is fact-intensive, the Court is unable to grant Defendant's motion for summary judgment on Plaintiff's claim of a breach of a duty to defend under the Policy.

### 3. Payment of Attorneys Fees in the EOS Lawsuit

Nilesh claims that Lawyers Title breached the Policy by refusing to pay the cost of defense and expenses incurred in defending the EOS Lawsuit. (Compl. ¶ 11.) In its motion for summary judgment, Lawyers Title states that it had no duty to defend Nilesh until it was notified of the Claim and Nilesh requested a defense of the EOS lawsuit. (Mot. at 15.) Defendant argues that it did not incur a duty to defend until Nilesh notified it of the EOS lawsuit. (*Id.*)

An insurer does not incur a duty to defend unless provided with notice as required in the insurance policy provisions. *See Crocker v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 526 F.3d 240, 241 (5th Cir. 2008) (citing *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603 (Tex.2008)). The Policy specifically, and clearly states: "Upon written request by the insured and subject to the options contained in Section 6 of these Conditions and Stipulations the Company, at its own cost and without unreasonably delay, shall provide for the defense of an insured in litigation . . . ." Policy,

Conditions and Stipulations § 4.

The evidence provided indicates that Nilesh Enterprises notified Lawyers Title of the EOS lawsuit on January 15, 2008. *See* Letter from Howell to Lawyers Title (Jan. 15, 2008). Plaintiff provides no evidence that it notified Lawyers Title of the EOS lawsuit prior to January 15, 2008. Under the specific provisions of the Policy, and in accordance with Texas law, Nilesh was required to notify Lawyers Title before any duty to defend would arise. Consequently, Lawyers Title is not liable to pay for attorneys' fees incurred prior to the date it was notified. Lawyers Title acknowledged its receipt of the January 15, 2008, letter seven days later on January 22, 2008, Letter from Johnston to Howell (Jan. 22, 2008), and acknowledged that the 1995 Covenants were covered by its policy, warranting a defense of Nilesh for the 1995 Covenant, Letter from Johnston to Howell (Jan. 23, 2008).[7] There being no evidence that Nilesh notified Defendant of the EOS lawsuit prior to January 15, 2008, Nilesh cannot recover attorneys' fees incurred prior to that date.

*4. Notice within a Reasonable Time*

Nilesh claims that Lawyers Title breached the Policy by failing to notify Nilesh within a reasonable time of its determination of the validity or invalidity of the claim. (Compl. ¶ 14.) In its motion for summary judgment, Lawyers Title states that it acted promptly in communicating with Nilesh about the determination of its claim. Lawyers Title points to its determination letter dated January 23, 2008, that acknowledged that the Policy covered the 1995 Covenants and stating that "Oliver had been engaged to defend Nilesh . . . ." (Resp. at 19.) Moreover, Lawyers Title argues that it provided prompt notice to Nilesh that his "proof of loss" was "premature, and advised it would

_____

[7]Whether Lawyers Title fulfilled its duty to defend after January 23, 2008, is an issue of fact. *See supra* Part III.A.2.

15

consider Nilesh's proof of loss at the appropriate time." (*Id.*)  Defendant further cites its May 1, 2008, letter to Plaintiff, discussing the effect of the settlement under the claim and whether or not Nilesh suffered a loss as submitted in March 2008.  Nilesh does not contest these facts.

The applicable term of the Policy states:

> When, after the date of the policy, the insured notifies the Company as required herein of a lien, encumbrance, adverse claim or other defect in title to the estate or interest in the land insured by this policy that is not excluded or excepted from the coverage of this policy, the Company shall promptly investigate the charge to determine whether the lien, encumbrance, adverse claim or defect is valid and not barred by law or statute.  The Company shall notify the insured in writing, within a reasonable time, of its determination as to the validity or invalidity of the insured's claim or charge under the policy.

Policy, Conditions and Stipulations § 3.  A reasonable time depends on the facts and circumstances of each case.  *Cont'l Sav. Ass'n v. U.S. Fidelity and Guar. Co.*, 762 F.2d 1239, 1243 (5th Cir. 1985).  A determination of a "reasonable time" ordinarily presents a question of fact to be presented to the trier of fact.  *Price v. Horace Mann Life Ins. Co.*, 590 S.W.2d 644, 646 (Tex. Civ. App.—1979 Amarillo, no writ).  "While generally a question of fact, reasonableness becomes a question of law if the facts are undisputed."  *Cont'l Sav. Ass'n*, 762 F.2d at 1243.

Here, the evidence is clear regarding the January 2008 correspondence between Nilesh and Lawyers Title.  Nilesh sent his correspondence to Lawyers Title notifying it of the EOS lawsuit, and eight days later, Lawyers Title notified Nilesh that its coverage applied to the 1995 Covenant.  Given the brief one week response on this matter, the Court finds that Lawyers Title responded within a reasonable time.  It is unclear, however, whether Lawyers Title's final determinations on the claim following Nilesh's subsequent letters to Defendant were provided within a reasonable time.  Lawyers Title did not provide a final determination to deny Nilesh's claim until December 2008.  *See* Letter from Sotak to Howell (Dec. 15, 2008) (Mot. ex. C.3.).  The length of time to reach a final

determination on the matter, coupled with the letters provided by Lawyers Title to Nilesh during the year, present an issue of fact to be determined by the fact-finder.

While the contract language indicates clearly that Lawyers Title is not obligated to pay for attorneys' fees incurred prior to Nilesh's notification, Nilesh presents issues of material fact as to whether Lawyers Title breached contractual provisions regarding indemnification, its duty to defend, and whether it communicated its claims decisions to Nilesh within a reasonable time. Nilesh cannot pursue a claim for breach of contract pertaining to attorney's fees that accrued prior to the date it sent notification to Lawyers Title. As to the remainder of the claims for breach of contract, Defendant's motion for summary judgment is denied.

*B. Breach of Duty of Good Faith and Fair Dealing*

In *Universe Life Insurance Co. v. Giles*, 950 S.W.2d 48 (Tex. 1997), the Texas Supreme Court held that an insurer is liable for a breach of the duty of good faith and fair dealing "by denying or delaying payment of a claim if the insurer knew or should have known that it was reasonably clear that the claim was covered." *Id.* at 49. There is generally no claim for bad faith when an insurer promptly denies an uncovered claim. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). To sufficiently allege a claim for the breach of duty of good faith and fair dealing, a plaintiff must show: (1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy, and (2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim. *See Lockett v. Prudential Ins. Co. of Am.*, 870 F. Supp. 735, 740 (W.D. Tex. 1994) (citing *Nat'l Union Fire Ins. Co. v. Dominguez*, 873 S.W.2d 373, 376 (Tex.1994)). Whether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is a question of fact for the fact-finder. *Giles*,

950 S.W.2d at 56 ("We therefore hold that whether an insurer acted in bad faith because it denied or delayed payment of a claim after its liability became reasonably clear is a question for the fact-finder."). On the other hand, "[i]f the undisputed facts demonstrate the insurer possessed evidence reasonably showing the insured's contract claim might not be valid, the bad faith action is not viable as a matter of law because the opposite of the vital fact has been conclusively proven." *Id.* at 740–41.

Lawyers Title's motion for summary judgment argues 1) that no breach of contract occurred, thereby precluding the claim for bad faith,[8] 2) Lawyers Title's liability was not reasonably clear and it never knew or should have known its liability was reasonably clear, and 3) Nilesh presents no evidence of causation. Plaintiff responds with references to an expert report that assesses the actions of Lawyers Title, the Defendant's privilege log showing counsel's communications with Lawyers Title in preparation for litigation, and Lawyers Title admitting coverage for the 1995 Covenant.

Lawyers Title points to a series of factors upon which it relied in reaching its decision to delay payment. Defendant states that it accepted coverage of the 1995 Covenant; that it had no obligation to indemnify Nilesh while the EOS lawsuit was ongoing as there was no final, non-appealable adjudication against title to the Property; and that Nilesh's settlement of the EOS lawsuit changed the nature of the case to such a degree that it warranted further evaluation by Lawyers Title. (Mot. at 18.) The evidence indicates that Lawyers Title was evaluating: Nilesh's claim (Lawyers Title notified Nilesh that its evaluation was ongoing), the effect of the settlement on the claim, and

---

[8]As previously noted, there is an issue of material fact as to whether Lawyers Title breached its contractual obligations with Nilesh. *See supra* Part III.A. The possibility of a breach of a contractual duty does not necessarily give rise to a breach of the duty of good faith and fair dealing. *See Lyons v. Millers Casualty Ins. Co.*, 866 S.W.2d 597, 600 (Tex.1993).

whether Nilesh's January notice prejudiced Lawyers Title.  *See* Letter from Mark Davenport, Figari & Davenport to Howell (May 1, 2008) (Mot. ex. C1.)   Lawyers Title ultimately declined to indemnify Nilesh in a letter dated December 15, 2008, in which the company explains the bases for its decision.  Letter from Sotak to Howell (Dec. 15, 2008).  Moreover, in his deposition, Lawyers Title attorney Stuart Johnston states that indemnification would not become an issue for the company until there is a final disposition of the EOS lawsuit.  Dep. of Stuart Johnston, 77:23–78:2 (Apr. 10, 2009) (Mot. ex. A.).  Coupled with the contractual terms that require a final, non-appealable disposition of the case, it is understandable that Lawyers Title would need to evaluate the changed nature of the claim as discussed in the May 1, 2008, letter.

Nilesh provides a list of factors in an attempt to show that Lawyers Title engaged in "bad faith."   None of these factors, however, demonstrate that the insurer's liability had become "reasonably clear" as required to make a claim for breach of the duty of good faith and fair dealing.  Plaintiff argues that Lawyers Title "abandoned Nilesh" and that Defendant's claims attorney "focused on defeating coverage [and] not defending Nilesh."  (Resp. at 24.)  These conclusory remarks do not demonstrate that the insurer's liability had become reasonably clear.  At best, these claims would support Nilesh's contention that Lawyers Title breached its contractual duty to defend.

Nilesh further argues that Lawyers Title's claims attorney "was engaging his supervisors and Lawyer[]s Title's counsel in privileged communications in preparation for future litigation against Nilesh."  (*Id.*)  It is not clear, however, how this demonstrates that liability had become reasonably clear or should have been reasonably clear under the circumstances.  Nilesh can only speculate as to the contents of the communication.

Nilesh also points out that Lawyers Title consulted an appraiser, Marty Glen, in April 2008,

to evaluate the financial impact of the 1995 Covenant. (*Id.* at 25.) While the report is dated June 22, 2008, and evaluates the market value of the Property as of January 15, 2008, this does not counter Lawyers Title's proffered letters that the settlement of the EOS lawsuit changed the nature of Nilesh's claim. The same holds true for Nilesh's argument that Lawyers Title never attempted to analyze the difference in the Property with and without the 1995 Covenant. (*Id.*) The material Nilesh uses to support this contention is the testimony of Stuart Johnston, in which he reiterates the information provided to Nilesh in Lawyers Title correspondence that Plaintiff's claim "was premature and it would be considered at the appropriate time." *See* Johnston Dep. at 159:14–16 (Resp. Ex. 12.).

Nilesh also presents handwritten notes in which Johnston references "Policy defenses which would defeat coverage." (Resp. at 25.) Again, nothing in the notes indicates that Lawyers Title's liability was reasonably clear or that Defendant should have known its liability was reasonably clear. In fact, the notes themselves contain a statement that the claim of loss is premature and references that the EOS litigation included adjudication of the 1996 Covenants that were excepted from the policy. These notes are consistent with the statements provided by Johnston in his deposition and with Lawyers Title's position that its evaluation of Nilesh's claim was premature pending resolution fo the EOS lawsuit. Consequently, Nilesh presents no issues of material fact regarding whether Lawyers Title's liability was reasonably clear, especially in light of Lawyers Title's contentions that it was evaluating its liability in light of the settlement of the EOS lawsuit. As a result, Lawyers Title's motion for summary judgment on Nilesh Enterprise's claim for breach of the duty of good faith and fair dealing is granted.

## C. Insurance Code and DTPA Violations

Nilesh Enterprises provides a blanket assertion that Lawyers Title's actions constituted violations of multiple sections of the Texas Insurance Code. (Compl. ¶ 18.) Among them are claims based on alleged misrepresentations and those based on alleged unfair claims settlement practices. The Court addresses each type in turn.

### 1. Misrepresentation Claims

Nilesh claims that Lawyers Title "misled Nilesh by way of it misrepresentation that Nilesh would be adequately and properly defended in the EOS lawsuit." (Compl. ¶ 7.) Nilesh states that Lawyers Title's misrepresentation constituted a violation of sections 541.051 and 541.061 of the Texas Insurance Code and section 17.46 of the Texas Deceptive Trade Practices Act. Lawyers Title points out that Nilesh "does not identify any specific misrepresentations other than the vague allegation" regarding Lawyers Title's defense of Nilesh in the EOS lawsuit. (Resp. at 25.) Defendant argues that Plaintiff is simply making out a breach of contract claim for Plaintiff's failure to honor its obligations under the Policy, citing Texas case law to argue that "failure to perform the terms of the contract is a breach, not a tort." *See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 591, 597 (Tex. 1992).

In its response Nilesh neglects to identify any alleged misrepresentations by Defendant aside from restating the alleged facts surrounding Lawyers Title's duty to defend. Moreover, Nilesh does not provide any argument or evidence to demonstrate that the alleged misrepresentation goes beyond a claim for breach of contract. The Court finds that Plaintiff has offered no summary judgment evidence of a misrepresentation made by Defendant. Plaintiff's assertions are merely breach of contract claims. Thus, this Court holds that the  misrepresentation claims do not give rise to a cause

of action under the Insurance Code or the DTPA.

*2. Unfair Claims Practices*

Nilesh Enterprises also claims that Lawyers Title committed unfair settlement practices in violation of Texas Insurance Code § 541.060 and the DTPA. Lawyers Title argues that the claims for violations of the Insurance Code relating to bad faith fail for the same reasons as the common law cause of action for bad faith. (Resp. at 27.) The statute defines an "unfair settlement claim practice" as "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear." TEX. INS. CODE. § 541.060 (Vernon 2005). A cause of action for unfair insurance practices arising from an insured's denial of a claim requires the same proof as a common law action for bad faith. *Bates v. Jackson Nat'l Ins. Co.*, 927 F. Supp. 1015, 1025 (S.D. Tex.1996); *see also Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas.") (citing *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.—Tyler 1994, writ denied)).

Here, Nilesh has not provided the Court with evidence to demonstrate bad faith in Lawyers Title's denial of its claim or in the time it took to evaluate the claim. *See supra* Part III.B. Moreover, in accordance with the Policy, Lawyers Title has presented reasons for the time it took to evaluate the claim and its ultimate denial of the claim. *See supra* Part III.B. These reasons—including the evaluation of the EOS lawsuit settlement and the impact of the new 2008 Covenant—provide a reasonable basis by which Lawyers Title could deny or delay payment of the claim. "'[A]s long as the insurer has a reasonable basis to deny or delay payment of the claim, even

if that basis is eventually determined by the factfinder to be erroneous, the insurer is not liable for the tort of bad faith.'"  *Lockett*, 870 F. Supp. at 740 (quoting *Lyons*, 866 S.W.2d at 599).  Given the evidence presented, Plaintiff's claims for statutory violations of the Texas Insurance Code and Deceptive Trade Practices are precluded.  Consequently, Defendant's motion for summary judgment on these claims is granted.[9]

## Conclusion

Plaintiff has raised enough questions of material fact to overcome the evidence provided by Defendant regarding Plaintiff's breach of contract claims.  Consequently, Defendant's motion for summary judgment pertaining to Plaintiff's breach of contract claims is DENIED with the caveat that Plaintiff cannot pursue claims for litigation fees that accrued prior to notifying Lawyers Title that litigation involving the 1995 Covenants had commenced.  On the other hand, Plaintiff has not provided enough evidence to warrant a question of material fact pertaining to its claims based on an

---

[9]Defendant argues that there is no private cause of action for violation of subchapter 542 of the Texas Insurance Code, which the Plaintiff includes in its claim. (Mot. at 26 n.12.)  Plaintiff does not dispute this specific point in its Response.  Subchapter 542 of the Texas Insurance Code does not contain an explicit private right of action.  Tex. Ins. Code §§ 542.001–.014.  The language of the statute indicates that it is to be enforced by the Texas Department of Insurance.  The Texas Supreme Court has, however, "implied" that a private right of action exists under this portion of the statute.  *See Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 134 (Tex.1988) (discussing article 21.21-2 of statute, the precursor to section 542.001–.014, and including reference to a definition in article 21.21-2 with a DTPA claim as stating a cause of action); *see also Brown v. De La Cruz*, 156 S.W.3d 560, 568 n.46 (Tex. 2004) (stating in dicta that "[i]n *Vail v. Texas Farm Bureau Mutual Insurance Co.*, we implied a private cause of action for insureds against their insurer for unfair claims settlement practices even though section 21.21-2 of the Insurance Code governing such practices did not, noting that the Insurance Code explicitly provided for private actions that incorporated violations of other sections, and that all remedies were declared to be cumulative." (citation omitted)).  In deference to the courts of the state of Texas, this Court declines to expound on the exact nature of a claim based on subchapter 542 of the Texas Insurance Code.  Regardless, the Court notes that Plaintiff does not provide evidence of bad faith to serve as a predicate for statutory-based claims.

alleged breach of the duty of good faith and fair dealing. This prevents Plaintiff from pursuing its statutory claims under the Texas Insurance Code and Deceptive Trade Practices Act. As a result, Defendant's motion for summary judgment is GRANTED as it pertains to Plaintiff's claims for breach of the duty of good faith and fair dealing as well as claims under the Texas Insurance Code and DTPA.

It is so ORDERED.

SIGNED this 16th day of September, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE